UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAISY BUENO, individually and as guardian ad litem of S.B., a minor,**<br><br>**Plaintiffs**<br><br>v.<br><br>**BASS LAKE JOINT UNION ELEMENTARY SCHOOL DISTRICT,**<br><br>**Defendant** | **CASE NO. 1:21-CV-0436 AWI HBK**<br><br>**ORDER RE: MOTION FOR STAY PUT** |

## I. Background

Plaintiff S.B. is a preschool aged, developmentally disabled student who lives within the bounds of Defendant Bass Lake Joint Union Elementary School District ("Bass Lake"). Plaintiff Daisy Bueno ("Ms. Bueno") is S.B.'s legal guardian. In May 2019, Ms. Bueno and Bass Lake began the process of determining what education services would be appropriate for S.B. On October 2, 2019, Ms. Bueno requested a due process hearing before the California Office of Administrative Hearings ("OAH"). The parties then reached a settlement agreement in November. In the following months, disputes again arose between the parties and Ms. Bueno filed a second OAH complaint on June 26, 2000, which became Case Number 2020060992. Administrative Law Judge Judith Pasewark heard the matter on several days between October 20 and November 5, 2020. Judge Pasewark issued her ruling on December 23, 2020 ("OAH Decision") concluding that Bass Lake denied S.B. a free appropriate public education ("FAPE"). Doc. 1-1. Plaintiffs filed the present case on March 16, 2021, alleging violations of Section 504 of the Rehabilitation Act and the Americans with Disabilities. Act.

The OAH Decision imposed a stay put Individualized Education Plan ("IEP") under the terms of the Individuals with Disability Education Act ("IDEA"). Unfortunately, S.B. fell ill and was hospitalized in Palo Alto, CA between November 2020 and May 29, 2021. S.B. was again hospitalized between August 30 and September 29, 2021. Plaintiffs have made a motion to have the stay put IEP enforced by injunction. Doc. 10. Bass Lake opposes the motion. Doc. 18.

## II. Legal Standards

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. The substantive standard for issuing a temporary restraining order and a preliminary injunction are "substantially identical." Kindred v. Bigot, 727 F. App'x 427, 427 (9th Cir. 2018), citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "We evaluate these factors via a 'sliding scale approach,' such that 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" Arc of Cal. v. Douglas, 757 F.3d 975, 983 (9th Cir. 2014), quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 and 1135 (9th Cir. 2011). "Injunctive relief...must be tailored to remedy the specific harm alleged." Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011).

## III. Discussion

When there is a dispute between an education agency and parents of a student over the terms of an IEP, the IDEA allows for either party to request a due process hearing. 20 U.S.C. § 1415(f). The results of the administrative procedures may be appealed by either party in state or federal court. 20 U.S.C. § 1415(i)(2). Pending a final resolution, IDEA specifies that the student

should remain in the existing educational placement. The statute states, "Except as provided in subsection (k)(4) [dealing with a change of placement due to a violation of a code of student conduct], during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child…" 20 U.S.C. § 1415(j). The implementing regulations state even more clearly "Except as provided in § 300.533 [dealing with a change of placement due to a violation of a code of student conduct], during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 CFR 300.518(a). Allowing the student to remain in their existing placement is "commonly referred to as the 'stay put' provision." Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1179 (9th Cir. 2002). The rationale for favoring the stay put option is that "there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting. In light of this risk, the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1040 (9th Cir. 2009).

"A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief." Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1037 (9th Cir. 2009), citing Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996). Indeed, the standard is functionally reversed: "The [stay put] preference may be overcome through the issuance of a preliminary injunction if the equitable factors traditionally used by courts to evaluate requests for interim injunctive relief favor a change in the child's placement." Henry v. Sch. Admin. Unit 29, 70 F. Supp. 2d 52, 58 (D.N.H. 1999), citing Honig v. Doe, 484 U.S. 305, 327 (1988); Johnson, 287 F.3d at 1180 ("To enjoin a 'stay put' order, a litigant must demonstrate either '(1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in [his] favor.'"). The burden is on

Bass Lake to show (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is not in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). But, the briefing provided is not tied to this standard. Bass Lake does not address the merits of the underlying case or irreparable harm. Instead, Bass Lake asks that a stay put injunction be denied for two reasons: "First, the DISTRICT is not responsible for providing the services to Plaintiff S.B. while she was outside of the DISTRICT. The school district in which the hospital is located is responsible. (See Ex. Code § 48206.3.)" and "Second, by law, because Plaintiff S.B. requires medication and specialized physical health care services to be provided, the DISTRICT was required to receive the appropriate written statements from her care team for the proper administration of such medication and services. (See Ed. Code § 49423.5(b); § 49423.)" Doc. 18, 5:5-20.

Plaintiffs do not address the first argument. See Doc. 19. Bass Lake appears to be correct that it is not responsible for services when S.B. is outside the school district: "Although the 'stay-put' provision is meant to preserve the status quo, we recognize that when a student transfers educational jurisdictions, the status quo no longer exists….the new district must implement the last agreed-upon IEP to the extent possible. To the extent implementation of the old IEP is impossible, the new district must provide services that approximate, as closely as possible, the old IEP." Ms. S. ex rel. G v. Vashon Island Sch. Dist., 337 F.3d 1115, 1133-34 (9th Cir. 2003), citations and quotations omitted. However, this does not appear to be a bar in this case as S.B. has not transferred out of Bass Lake. While S.B. is at home, the stay put IEP requires Bass Lake to provide her with the appropriate services.

Bass Lake's second argument appears to be that it cannot comply with the stay put IEP because provisions of California Education Code require Bass Lake to obtain written authorization from S.B.'s doctors before providing services and that those authorizations were not given. Specifically, Bass Lake states that it has had difficulty "trying to obtain the necessary written authorizations from Plaintiff S.B.'s medical providers to be able to provide her services as required by Sections 49423, 49423.5." Doc. 18, 7:5-7. S.B. represents that "the District is not

required to get 'authorizations' to provide S.B. with the special education and related services ordered in OAH Case No. 2020060992 and provided for under federal law." Doc. 19, 5:13-15. The dispute centers around the provision of medications and specialized health services.

With respect to medications, Section 49423.5 states in part "Specialized health care or other services that require medically related training shall be provided pursuant to the procedures prescribed by Section 49423." Cal. Educ. Code § 49423.5(b). Section 49423 only deals with medications:

> (a)…any pupil who is required to take, during the regular schoolday, medication prescribed for him or her by a physician and surgeon…may be assisted by the school nurse or other designated school personnel or may carry and self-administer prescription auto-injectable epinephrine if the school district receives the appropriate written statements identified in subdivision (b).
>
> (b)
> (1) In order for a pupil to be assisted by a school nurse or other designated school personnel pursuant to subdivision (a), the school district shall obtain both a written statement from the physician and surgeon or physician assistant detailing the name of the medication, method, amount, and time schedules by which the medication is to be taken and a written statement from the parent, foster parent, or guardian of the pupil indicating the desire that the school district assist the pupil in the matters set forth in the statement of the physician and surgeon or physician assistant.
>
> ….
>
> (3) The written statements specified in this subdivision shall be provided at least annually and more frequently if the medication, dosage, frequency of administration, or reason for administration changes.

Cal. Educ. Code § 49423. These code provisions make clear that appropriate school personnel may administer prescribed medications when written statements are provided by both the doctor and the guardian.

With regards to specialized health services, Section 49423.5 also states:

> (a)… an individual with exceptional needs who requires specialized physical health care services, during the regular schoolday, may be assisted by any of the following individuals:
> (1) Qualified persons who possess an appropriate credential issued pursuant to Section 44267 or 44267.5, or hold a valid certificate of public health nursing issued by the Board of Registered Nursing.
> (2) Qualified designated school personnel trained in the administration of specialized physical health care if they perform those services under the supervision…

Cal. Educ. Code § 49423.5. The implementing regulations provide the definition, "Specialized

physical health care services means those health services prescribed by the child's licensed physician and surgeon requiring medically related training for the individual who performs the services and which are necessary during the school day to enable the child to attend school." Cal. Code Regs. tit. 5, § 3051.12(b)(1)(A). Bass Lake points out that the regulations also say:

> Written licensed physician and surgeon and parent requests, as well as the specific standardized procedures to be used if physical health care services are provided, shall be maintained for each individual with exceptional needs. Daily documentation of specific services which are provided shall be maintained on a district-approved form which shall include the signatures of the qualified designated school person(s) who performs the procedure.
> 1. Any pupil who is required to have specialized physical health care services during the school day, prescribed for him or her by a licensed physician and surgeon, may be assisted by a qualified school nurse, qualified public health nurse, or other qualified school personnel, if the school district receives:
> a. A written statement from the licensed physician and surgeon stating the procedure and time schedules by which such procedures are to be given; and
> b. A written statement from the parent or guardian of the pupil, indicating the desire that the school district assist the pupil in the matters set forth in the licensed physician and surgeon's statement, and granting consent for the delivery of such services.
> 2. This written statement of a licensed physician and surgeon and parent requests and daily documentation shall be maintained in accordance with the requirements of confidentiality of pupil records, and are considered mandatory interim pupil records.

Cal. Code Regs. tit. 5, § 3051.12(b)(3)(E). As with medications, these regulations deal with health care services that are prescribed by a doctor. Such services can be administered by appropriate school district personnel when written statements are provided by both the doctor and the guardian.

Turning to the services that S.B. receives, the parties have not provided copies of past IEPs and amendments. S.B. represents:

> 8. In November of 2019, Ms. Bueno and Bass Lake entered into a settlement agreement where Bass Lake agreed to provide S.B. with several independent assessments and the following supports and services:
> a. 20 hours per week of in-home instruction;
> b. 60 minutes per week of occupational therapy;
> c. 60 minutes per week of physical therapy;
> d. 60 minutes per week of speech and language therapy;
> e. 20 hours per week of nursing services; and
> f. 30 minutes per month of deaf and hard of hearing consultation.

Doc. 1, 3:1-9. Bass Lake "admits that the parties entered into a settlement agreement in

6

November 2019 which included BASS LAKE's agreement to provide certain specifically identified and limited independent assessments, and to provide individual functional academics up to 20 hours per school week, individual occupational therapy twice a week for 30 minutes, per school week, individual physical therapy twice a week for 30 minutes, per school week, individual language and speech therapy twice a week for 30 minutes, per school week, individual nursing services 4 hours per school day, and deaf/hard of hearing consultation services twice a month for 15 minutes, per school month." Doc. 9, 2:7-14. What is in the record is the order of Judge Pasewark in this case. In relevant part, she ruled that:

> 1. Bass Lake shall generate a corrected copy of the June 4, 2019 IEP as amended on November 14, 2019, which is correctly dated, paginated, and contains all part[s] of the IEP document including all IEP team notes. The June 4, 2019 IEP shall be further amended to include the following services:
>    a. 20 hours per week of home-based functional academics;
>    b. 20 hours per week of nursing services pursuant to the terms contained in the November 14, 2019 IEP amendment;
>    c. 60 minutes per week of direct vision services;
>    d. 60 minutes per week of vision consultation services;
>    e. 30 minutes per week of orientation and mobility services;
>    f. 30 minutes per month of orientation and mobility consultation services;
>    g. 120 minutes per week of direct physical therapy services;
>    h. 60 minutes of physical therapy consultation services provided 10 times per year;
>    i. 60 minutes per week of direct occupational therapy;
>    j. 30 minutes per month of deaf and hard of hearing consultation;
>    k. 120 minutes per week of direct speech and language services; and
>    l. 60 minutes per month of speech and language consultation.
>
> 2. This order shall constitute stay-put in the event of a dispute regarding the 2020-2021 annual IEP.
>
> ….
>
> 11. Bass Lake shall direct the school nurse to complete Student's healthcare plans for discussion by the IEP team at Student's 2021 annual IEP team meeting. Within five days of this Decision, Parent shall provide the school nurse with a written list of all health care providers she deems necessary to determine whether the services of a registered nurse are required to provide Student with educationally related nursing services and an executed Release of Information to obtain Student's relevant medical records. Bass Lake shall ensure that the school nurse attends the annual IEP meeting.

Doc. 10-1, 74-77.

From this record, it is not clear if Bass Lake personnel administer any medications or provide any specialized physical health care services. As part of its opposition, Bass Lake has

7

provided a declaration from Anita Jensen, the District Nurse, who states that she "prepared Physician's Authorization for Specialized Physical Health Care Service Procedures and Medication Administration to be executed by Plaintiff S.B.'s care providers." Doc. 18-1, 7:11-12. This suggests that Bass Lake personnel might be called on to take some actions involving a doctor's prescription.

The case law on the enforcement of these laws is extremely sparse. One case analyzed whether Section 49423 established a fundamental public policy that could give rise to a wrongful termination claim against school personnel. In relevant part to this case, that court did note "Section 49423 by its terms does not prohibit any conduct. Instead it is expressly permissive, delineating a circumstance under which the school nurse 'may' assist in the administration of medication to a student during the schoolday. An accompanying Education Code section emphasizes that it is 'the intent of the Legislature to provide positively for the health services, many of which may be performed in the public schools only by physicians and school nurses.' (Ed. Code, § 49426, italics added.) As the statute is explicitly permissive, there is, of course, no delineation of any sanctions (criminal or otherwise) that would apply to a failure to abide by its terms." Carter v. Escondido Union High Sch. Dist., 148 Cal. App. 4th 922, 930 (Cal. App. 4th Dist. 2007). Section 49423 does specifically state, "This section does not diminish or weaken any federal requirement for serving individuals with exceptional needs under the Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.), and its implementing regulations, and under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. Sec. 794) and its implementing regulations." Cal. Educ. Code § 49423.5(f).

On balance, though, the statutes and regulations Bass Lake has cited do establish a standard the school district and its personnel should meet. Nothing about the standard necessitates the cessation of the stay put IEP. "When the child's last implemented IEP cannot be implemented due to a change in circumstances, stay-put requires that the student receive a placement that, as closely as possible, replicates the last placement." R.F. v. Delano Union Sch. Dist., 224 F. Supp. 3d 979, 985 (E.D. Cal. 2016), citing Van Scoy ex rel. Van Scoy v. San Luis Coastal Unified Sch. Dist., 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005). This is consistent with Bass Lake's own

assertion that "The DISTRICT intends to comply with the ALJ's Decision and has diligently endeavored to see to it that the necessary instructions were prepared and the required authorizations obtained…" Doc. 18, 7:13-14. No part of Bass Lake's opposition shows that it is likely to succeed on the merits, is likely to suffer irreparable harm, that the balance of equities tips in its favor, or that an injunction would not be in the public interest. An injunction to enforce the stay put IEP should issue. However, any part of the IEP which requires medication or physical help that is prescribed by a doctor must have the documentation requirements of Sections 49423 and 49423.5 fulfilled before those parts of the IEP can be implemented; this is limited to doctors' prescriptions. Nothing in this order should be interpreted to be a ruling as to whether Bass Lake's past conduct has or has not satisfied the terms of the stay put IED.

**IV. Order**

Plaintiffs' motion for an injunction enforcing the terms of the stay put IEP is GRANTED.

IT IS SO ORDERED.

Dated: November 30, 2021

_____
SENIOR DISTRICT JUDGE