**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DAISY BUENO, individually and as guardian ad litem of S.B., a minor,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**BASS LAKE JOINT UNION ELEMENTARY SCHOOL DISTRICT,**<br><br>**Defendant** | **CASE NO. 1:21-CV-0436 AWI HBK**<br><br>**ORDER RE: MOTION FOR CIVIL CONTEMPT** |

**I. Background**

Plaintiff S.B. is a developmentally disabled student with exceptional needs who lives within the bounds of Defendant Bass Lake Joint Union Elementary School District ("Bass Lake"). Plaintiff Daisy Bueno ("Ms. Bueno") is S.B.'s legal guardian.  In May 2019, Ms. Bueno and Bass Lake began the process of determining what education services would be appropriate for S.B.  On October 2, 2019, Ms. Bueno requested a due process hearing before the California Office of Administrative Hearings ("OAH").  The parties then reached a settlement agreement in November. In the following months, disputes again arose between the parties and Ms. Bueno filed a second OAH complaint on June 26, 2000, which became Case Number 2020060992.  Administrative Law Judge Judith Pasework heard the matter on several days between October 20 and November 5, 2020.  Judge Pasework issued her ruling on December 23, 2020 ("OAH Decision") concluding that Bass Lake denied S.B. a free appropriate public education ("FAPE").  Doc. 1-1.  Plaintiffs filed the present case on March 16, 2021, alleging violations of Section 504 of the Rehabilitation Act and the Americans with Disabilities. Act.

The OAH Decision imposed a stay put Individualized Education Plan ("IEP") under the terms of the Individuals with Disability Education Act ("IDEA").  Unfortunately, S.B. fell ill and was hospitalized in Palo Alto, CA at various times in 2020 and 2021.  In addition, the COVID-19 pandemic was creating difficulties in regular function for everyone, including schools.  S.B.'s IEP was not being fully implemented for a variety of reasons.  On September 10, 2021, Plaintiffs sought a preliminary injunction to enforce the IEP. Doc. 10.  Bass Lake opposed the motion. Doc. 18.  On November 30, 2021, Plaintiffs' motion was granted. Doc. 21.  Plaintiffs filed the present motion on February 10, 2022, alleging that Bass Lake has not complied with the terms of the IEP and were thus violating this court's injunction; the motion sought sanctions under civil contempt. Doc. 23.  Bass Lake opposes the motion. Doc. 24.

## II. Legal Standards

Courts "have inherent power to enforce compliance with their lawful orders" through civil contempt orders. Shillitani v. United States, 384 U.S. 364, 370 (1966); Shell Offshore Inc. v. Greenpeace, Inc., 815 F.3d 623, 629 (9th Cir. 2016).  Civil contempt includes "a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (quoting In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.1993)).

"In a civil contempt action, '[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.'" Federal Trade Comm'n v. Enforma Nat. Prod., Inc., 362 F.3d 1204, 1211 (9th Cir. 2004) (citations omitted).  "The contempt need not be willful; however, a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (quotations omitted).

"Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and

to compensate the complainant for losses sustained. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." United States v. United Mine Workers, 330 U.S. 258, 303-4 (1947) (citations omitted).  "If the fine, or any portion of the fine, is coercive, it should be payable to the court, not [the opposing party]." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986).

### III. Discussion

Plaintiffs' motion to enforce the IEP was granted on November 30, 2021. Doc. 21.  Much of what the parties dispute in their briefing covers actions and omissions from before that date. This order will only address Bass Lake's actions after November 30, 2021.

### A. Compliance With the IEP

Plaintiffs argue that Bass Lake has not complied with the stay put injunction and has not fulfilled the requirements of S.B.'s IEP.  In particular, Plaintiffs point out that the IEP requires the following services:

> a. 20 hours per week of home-based functional academics;
> b. 20 hours per week of nursing services pursuant to the terms contained in the November 14, 2019 IEP amendment;
> c. 60 minutes per week of direct vision services;
> d. 60 minutes per week of vision consultation services;
> e. 30 minutes per week of orientation and mobility services;
> f. 30 minutes per month of orientation and mobility consultation services;
> g. 120 minutes per week of direct physical therapy services;
> h. 60 minutes of physical therapy consultation services provided 10 times per year;
> i. 60 minutes per week of direct occupational therapy;
> j. 30 minutes per month of deaf and hard of hearing consultation;
> k. 120 minutes per week of direct speech and language services; and
> l. 60 minutes per month of speech and language consultation.

Doc. 23-1, p. 74-75.  Ms. Bueno has provided a declaration dated February 9, 2022 stating that:

> 5. During December 2021, the District provided six hours of service as follows:
> a. Nursing services for four hours;
> b. Occupational therapy for one hour;
> c. Vision services for thirty minutes; and
> d. Orientation and mobility services for thirty minutes.

3

….

7. The District has not provided any services to S.B. since December 2, 2021.
Doc. 23-2, 2:3-9.

In opposition, Bass Lake has argued that it "has been laboring to provide S.B. with all of
the services, but has not been able to provide some of the required services due to circumstances
beyond its control, including the global pandemic brought about by COVID-19 and the impact it
had both on the DISTRICT and its staff, in handling the many additional challenges, including but
not limited to contact tracing, as well as the shortages experienced in labor market, retirements and
resignations." Doc. 24, 2:11-15.  Diane Hagood, Bass Lake's special education coordinator, has
provided a declaration dated March 1, 2022 that sets out what Bass Lake has done comply with
the IEP.  With respect to actions after November 30, 2021, Bass Lake appears to have addressed
some but not all of the specific list of services (items a through l) the IEP required to be provided.
In sum, Bass Lake argues that it "has taken all reasonable steps with[in] its power to comply."
Doc. 24, 7:20.

In reply, Plaintiffs state "There are so many misrepresentations contained in Bass Lake's
Opposition it is not possible to respond to each one." Doc. 25, 2:1-2.  This response is not
sufficient.  Without proper declarations to specifically contradict Ms. Hagood's statement, her
declaration (together with Ms. Bueno's declaration) will be used to determine what services were
provided after November 30, 2021.

For item a (30 hours per week of home-based functional academics), Ms. Hagood stated
"9. For example, the DISTRICT recruited, through the Maxim Agency, a teacher specifically to
work with S.B. named Lewis Marques. Mr. Marquez accepted the position and moved from
Arizona to Coarsegold. He participated in one Google Meets session to observe the Trexo
demonstration, and then resigned and returned to Arizona." Doc. 24-1, 2:18-21.  Ms. Hagood
provides no indication that any academic services have been provided after November 30, 2021.

For item b (20 hours per week of nursing services), Ms. Hagood stated "13. Nursing
services for S.B. recently resumed in her home on Tuesday, February 8, 2022, although BUENO
did not mention that in her declaration dated the day after, February 9, 2022." Doc. 24-1, 3:13-14.

Additionally, Ms. Bueno stated that Bass Lake provided four hours of nursing services in December 2021. Doc. 23-2, 2:4.  The parties also continue their dispute from prior briefing regarding whether certain specific services that a nurse might perform would require a doctor's prescription. See Doc. 24, 5:3-6:3; Doc. 25, 4:5-26.  That dispute is not material in this motion as it is plain that S.B. was not provided anything close to 20 hours of nursing services a week.

For items c and d (60 minutes per week of direct vision services and 60 minutes per week of direct vision consultation services), Ms. Hagood stated "18. As for the Visual Impairment Specialist, the DISTRICT hired Justin Adams. An employee of Madera County Superintendent of Schools, to provide services to S.B. Mr. Adams provides services based on his and Plaintiffs' availability." Doc. 24-1, 4:10-12.  Ms. Hagood did not give any further information about when vision services or consults were actually provided to S.B.  Ms. Bueno stated that 30 minutes of vision services were provided in December 2021. Doc. 23-2, 2:6.

For items e and f (30 minutes per week of orientation and mobility services and 30 minutes per month of orientation and mobility consultation services), Ms. Hagood stated "15. As for the Orientation and Mobility Specialist, the DISTRICT hired Steve Wimbish, an employee of Madera County Superintendent of Schools, to provide services to S.B. Mr. Adams provides services based on his and Plaintiff' availability. Attached hereto as Exhibit 'A' is a true and correct copy of his service log." Doc. 24-1, 3:23-26.  The log only documents services provided in October and November 2021, outside the time frame at issue in this motion. Doc. 24-1, Ex. A.  Ms. Bueno stated that 30 minutes of orientation and mobility services were provided in December 2021. Doc. 23-4, 2:7.

For items g and h (120 minutes per week of direct physical therapy services and 60 minutes of physical therapy consultation services provided 10 times per year), Ms. Hagood stated "14. As for physical therapy for S.B., the DISTRCT has contacted the Hawaii-California Elks Program which advised that they will only coordinate directly with the parents and so that information was passed along to BUENO." Doc. 24-1, 3:20-22.  Ms. Hagood did not give any further information about when physical therapy services or consults were actually provided to S.B.

For item i (60 minutes per week of direct occupational therapy), Ms. Hagood stated "17. As for the Occupational Therapist, the DISTRICT hired Judith Weiss, an employee of Madera County Superintendent of Schools, to provide services to S.B. Ms. Weiss provides services based on her and Plaintiffs' availability. Attached hereto as Exhibit 'C' is a true and correct copy of her service log." Doc. 24-1, 4:6-9.  The log shows 45 minutes of service was provided on December 2, 2021 and 20 minutes of consultation was provided on February 1, 2022. Doc. 24-1, Exhibit C. This is roughly consistent with Ms. Bueno's statement that one hour of occupational therapy was provided in December 2021. Doc. 23-2, 2:5.

For item j (30 minutes per month of deaf and hearing consultation), Ms. Hagood stated "16. As for the Deaf and Hard of Hearing Specialist, the DISTRICT hired Nannette Oswald, an employee of Madera County Superintendent of Schools, to provide services to S.B. Ms. Oswald had attempted on three occasions to schedule consults with BUENO, but to no avail. Attached hereto as Exhibit 'B' is a true and correct copy of an email from her explaining her attempts." Doc. 24-1, 4:1-5.  The email, dated February 17, 2022 from Ms. Oswald to Ms. Hagood states that she contacted Ms. Bueno on December 20, January 20, and February 17 for consultation and "explained [to Ms. Bueno that Ms. Oswald] will most likely show up there in person in March." Doc. 24-1, Ex. B.

For items k and l (120 minutes per week of direct speech and language services and 60 minutes per month of speech and language consultation), Ms. Hagood stated "10. The DISTRICT hired a Speech and Language Pathologist, Kendra Albanese of Granite Mountain Home Health, to work with S.B., however, in December last year, she too resigned and was not willing to continue with S.B." Doc. 24-1. 2:22-24.  Ms. Hagood provides no indication that any speech and language services or consult has been provided after November 30, 2021.

Ms. Hagood also stated that "19. In addition to the calls and visits made to local health agencies in Fresno, Madera, Mariposa counties, ACC Providers and physical therapists, the DISTRICT is and has been utilizing the services of the following agencies to recruit individuals to fill the positions needed for S.B.: [list of 11 agencies]." Doc. 24-1, 4:13-26.  Bass Lake also argues that "Plaintiffs are not always available to accept the services when they are available." Doc. 24,

9:13.

Even if Ms. Hagood's statement was to be credited as correct despite the discrepancies with Ms. Bueno's statement, this record clearly shows that Bass Lake did not fully or even substantially comply with the requirements of the IEP.  Given the great disparity between the few hours documented and the total number of hours that are required, Bass Lake can be said to have only provided minimal service.  The COVID-19 pandemic has caused great difficulties for persons and organizations around the world.  But, that does not excuse complete non-compliance with the IEP.  "When the child's last implemented IEP cannot be implemented due to a change in circumstances, stay-put requires that the student receive a placement that, as closely as possible, replicates the last placement." R.F. v. Delano Union Sch. Dist., 224 F. Supp. 3d 979, 985 (E.D. Cal. 2016), citing Van Scoy ex rel. Van Scoy v. San Luis Coastal Unified Sch. Dist., 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005).  Even with the present difficulties, Bass Lake must at least substantially comply with the IEP.  The Northern District of Georgia has found that notwithstanding the pandemic, "only scheduling a student for half of the instruction required by his IEP" was a failure to implement the IEP. T.H. v. Dekalb Cty. Sch. Dist., 564 F. Supp. 3d 1349, 1359 (N.D. Ga. 2021).  As for Bass Lake's assertion that Plaintiffs' lack of cooperation may have impeded the provision of some services, Bass Lake has provided no evidence of any specific incident where that might have excused any of the IEP obligations.  However, the record does appear to show that Bass Lake's efforts have been increasing.

Plaintiffs have established that Bass Lake failed to comply with this court's injunction and the IEP over the period December 1, 2021 through February 10, 2022.  Sanctions to ensure that Bass Lake makes greater effort to provide S.B. all of her services are warranted.

**B. Sanctions**

Plaintiffs ask for sanctions in the form of a monetary penalty.  They estimate that the IEP specified "approximately 48 hours per week of services" and that "approximately ten weeks, have passed since the Court issued its Order." Doc. 23, 4:10-13.  In the OAH Decision, Judge Pasewark awarded Plaintiffs 500 hours of compensatory education services, specifying "The cost for 500

1    hours of compensatory services shall not exceed the sum of $75,000." Doc. 23-1, at 73.  Plaintiffs

2    use that language to value the cost of all education services at $150 per hour.  Plaintiffs request

3    compensatory sanctions in the amount of $66,825 (48 hours per week x 10 weeks x $150 per hour)

4    and that "Any compensatory sanctions awarded to Plaintiffs would be deposited into a special

5    needs trust for the benefit and care of S.B. Plaintiffs would require the District to fund the

6    establishment of such trust, which is estimated to be around $6,000." Doc. 23, 4:15-17 and 4:25-

7    27.  Plaintiffs also seek to be awarded $7,200 per week in coercive sanctions to ensure future

8    compliance and an order for Bass Lake to contact the California Department of Education for

9    assistance in implementing the IEP. Doc. 23, 4:17-24.  Additionally, Plaintiffs seek attorney's fees

10   and costs associated with the present motion. Doc. 23, 4:24-5:1.

11        Bass Lake objects to using weeks instead of school days to calculate sanctions because the

12   school district was not in session for two weeks for winter holidays.  Bass Lake also asserts that

13   the $75,000 figure Judge Pasework used in the IEP was a "cap…not intended to establish the

14   reasonable value of such services." Doc. 24, 9:7-8.

15        On this point, Bass Lake's arguments are reasonable.  For compensatory damages,

16   Plaintiffs bear the burden of proof. See In re 1601 W. Sunnyside #106, 2010 Bankr. LEXIS 4903,

17   at *17 (Bankr. D. Idaho Dec. 30, 2010) ("In order to recover such damages, the party asserting

18   compensatory damages must specifically prove not only the right to damages, but also the amount

19   of damages").  Plaintiffs base their sanctions request on an estimate of 10 weeks of no services

20   being delivered.  This does not take into account the school calendar or the fact that there were

21   some minimal services that Bass Lake did provide in this time.  There is also some dispute

22   between the declarations of Ms. Bueno and Ms. Hagood.  Instead of a more specific accounting,

23   Plaintiffs seek sanctions based on an overinclusive estimate of time.  The same is true of cost.

24   Plaintiffs have not provided any evidence of the actual cost of the specific services that Bass Lake

25   should have provided.  While Judge Pasework's language in the IEP is instructive, it is not

26   sufficient.  Further, Plaintiffs' request for compensation for educational services based on civil

27   contempt overlaps and intertwines with Plaintiffs' substantive claims in this case.  The U.S.

28   Supreme Court has noted that this form of sanction "must of course be based upon evidence of

complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." United States v. United Mine Workers, 330 U.S. 258, 303 (1947).  These issues merit against an award of compensatory sanctions in this form.

Instead, courts commonly award attorney's fees as compensation: "A court may award the aggrieved party the attorney's fees and costs incurred in obtaining the finding of contempt as a compensatory contempt sanction." Harrington v. Tackett, 2022 U.S. Dist. LEXIS 95466, at *2 (D. Nev. May 27, 2022) (citing Donovan v. Burlington N., 781 F.2d 680, 684 (9th Cir. 1986)); see also RG Abrams Ins. v. Law Offices of C.R. Abrams, 2022 U.S. Dist. LEXIS 228226, at *27 (C.D. Cal. Dec. 19, 2022).  This part of Plaintiffs' request for sanctions may be granted.  If the parties' continuing attempts at resolving this case through settlement do not bear fruit and Bass Lake fails to comply with the injunction to implement the IEP in the future, other forms of sanctions may be warranted.


## IV. Order

Plaintiffs' motion for civil contempt is GRANTED.  Bass Lake is reminded of its obligation to comply with court orders and to implement S.B.'s IEP.  Plaintiffs may seek attorney's fees and costs for this civil contempt motion.

IT IS SO ORDERED.

Dated:   April 28, 2023

_____
SENIOR  DISTRICT  JUDGE